**FIDELITY STANDARD LIFE INSURANCE COMPANY, Plaintiff,**

v.

**FIRST NATIONAL BANK & TRUST COMPANY OF VIDALIA, GEORGIA, Defendant and Third Party Plaintiff,**

v.

**SECURITY MUTUAL CASUALTY COMPANY, Third Party Defendant.**

**Civ. A. No. 674–8.**

United States District Court,
S. D. Georgia,
Swainsboro Division.

Oct. 2, 1974.

Dow N. Kirkpatrick, II (Jones, Bird & Howell) Atlanta, Ga., for Fidelity Standard Life Ins. Co.

Paul W. Calhoun, Jr., Vidalia, Ga., for First National Bank & Trust Co. of Vidalia.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LAWRENCE, Chief Judge.

Fidelity Standard Life Insurance Company sues in this Court for enforcement of a judgment of $281,685.71, against First National Bank & Trust Company of Vidalia, Georgia, entered in the Civil District Court for the Parish of Orleans, Louisiana, on December 10, 1973. An appeal is now pending in the Louisiana Court of Appeals.[1]

Admitting that it has not paid the judgment in question, defendant asserts in its answer that the Civil District Court in Louisiana was without jurisdiction to decide the case; that the judgment entered is not a final one as required by the Full Faith and Credit clause, and that the loan agreement on which the judgment is based was infected or procured by fraud.[2]

Plaintiff moves for summary judgment. In support thereof, it has attached (a) a certified copy of the exception to jurisdiction filed in the District Court for the Parish of Orleans; (b) copies of the memoranda of law in connection therewith; (c) copies of the Notice of Appeal and Motion therefor in the District Court for the Civil District of Orleans Parish, and (d) copies of the depositions of the Executive Vice President of the defendant Bank, P. W. Tippett, and its attorney, the late Nat Carter.

It appears that in May, 1968, certain complicated loan transactions were the subject of negotiations between First National Bank of Vidalia, a national banking institution, and Fidelity Standard Life Insurance Company, a Louisiana corporation. They took place at New Orleans and at Vidalia, Georgia.

Agreements between the parties were entered into.

Subsequently, Fidelity Standard brought suit against First National in the Civil District Court in Orleans Parish to recover securities alleged to have been wrongfully appropriated by the defendant Bank in connection with the loan transactions referred to. Service on defendant was perfected under the Long-Arm statute of Louisiana. Judgment was rendered by the trial court in the amount previously stated.[3]

Plaintiff's motion for summary judgment raises three issues:

(1) Whether this Court can look behind the Louisiana judgment to determine independently whether it had jurisdiction under the Long-Arm statute.

(2) Whether the judgment of the Louisiana court is a final one so as to be entitled to recognition and enforcement in this jurisdiction under the Full Faith and Credit clause.

(3) Whether the contention that the loan agreements on which the Louisiana judgment was based were procured by fraudulent transactions represents a valid defense to the action in this Court to enforce same.

Briefs were filed by the parties following oral argument on August 2nd last. Before considering the legal questions presented by plaintiff's motion for summary judgment, a few liminary comments as to full faith and credit are in order.

Article IV, Section 1 of the federal Constitution provides:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the

---

1. This Court is unaware of the precise status of the appeal. It has not been argued and apparently no decision can be expected for some months.

2. First National Bank has filed a third-party complaint against Security Mutual Casualty Company, claiming that the third-party defendant issued a Banker's Blanket Bond insuring it against any loss incurred as a result of the Louisiana judgment. That phase of the case is not now before this Court.

3. The non-jury trial which was a lengthy one followed extended discovery proceedings.

Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

Title 28 U.S.C. § 1738 which was enacted pursuant to the Full Faith and Credit Clause deals with the effect to be accorded judicial proceedings in other courts of the United States. It provides for a uniform manner of authenticating such proceedings and states that "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and 'Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

■ A judgment proved in the manner provided by 28 U.S.C. § 1738 is likewise entitled to receive the same force, recognition and effect in any United States court as it would receive in the courts of the state where the judgment was rendered. Davis v. Davis, 305 U.S. 32, 40, 59 S.Ct. 3, 83 L.Ed. 26; Williams v. Murdoch, 330 F.2d 745, 751 (3rd Cir.).

I

UNDER THE FACTS SHOWN IN THE RECORD, CAN THIS COURT LOOK BEHIND THE LOUISIANA JUDGMENT TO DETERMINE INDEPENDENTLY WHETHER THE STATE COURT IN RENDERING SAME POSSESSED JURISDICTION OVER THE DEFENDANT PURSUANT TO THE LONG–ARM STATUTE OF LOUISIANA?

Defendant claims that the Civil District Court in Louisiana was without jurisdiction over it and that the judgment rendered against the Bank is not entitled to recognition and enforcement in this jurisdiction.

■ When a court is called on to enforce a foreign judgment, it may properly examine the basis for jurisdiction of the court in which the judgment was entered. However, the extent of inquiry into jurisdiction is limited, the scope of examination being thus defined in Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186:

" . . . while it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment."

Included in the record attached to plaintiff's motion for summary judgment is an Exception to Jurisdiction filed on behalf of defendant in the Louisiana action in 1968. Making a limited appearance for that purpose only, First National challenged the jurisdiction of the Louisiana court. Defendant contended that it had no personnel in Louisiana and did no business in that State and that, while the loan commitment was negotiated by the Bank's representatives at New Orleans, its co-defendants failed to supply agreed collateral as required by the commitment whereupon a new agreement (or novation), involving different collateral, was negotiated and entered into in Georgia.

Attached to the motion for summary judgment by Fidelity Standard in this Court are copies of the rather extensive briefs in the Louisiana court, dealing with the applicability of that State's Long-Arm statute.[4] On the last page of the Exception to the Jurisdiction the following "minute entry" under the date of

4. The factual setting in which the jurisdictional question was decided included lengthy discovery of the two representatives of First National.

May 25, 1969, appears: "Exception Overruled."

■ The record before me demonstrates that the jurisdictional question was raised and fully litigated in the Civil District Court of Louisiana.[5] The issue was decided against the Bank. To be sure, the entry of the ruling of the trial court was two words long. For purposes of according full faith and credit, this Court would have preferred a more extensive exposition of reasons for the decision. However, brevity does not weigh against the effectiveness of the judgment of the court of original jurisdiction. There is a presumption in favor of regularity. Kalb v. Feuerstein, 308 U.S. 433, 438, 60 S.Ct. 343, 84 L.Ed 370; Michener v. Johnston, 141 F.2d 171, 175 (9th Cir.).

■■ What the Bank is trying to do here is to relitigate the jurisdictional issue as to applicability of the Long-Arm statute. This it cannot do. In the case of collateral attack on the judgment of another court respecting jurisdiction over defendant's person, once it is shown that such issue was fully litigated in the original court, binding effect must be accorded to same under the Full Faith and Credit Clause. Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244. Where a respondent had his day in court on every issue, including the jurisdictional question of petitioner's domicile, "there is nothing in the concept of due process which demands that a defendant be afforded a second opportunity to litigate the existence of jurisdictional facts." Sherrer v. Sherrer, 334 U.S. 343, 348, 68 S.Ct. 1087, 1089, 92 L.Ed 1429. "It is well settled that when the question of jurisdiction is made the court has juris-

diction to pass upon that question, and if it holds that it has jurisdiction and proceeds to judgment, the judgment is not a nullity, though the question of jurisdiction may have been erroneously decided." National Park Bank v. McKibben, 43 F.2d 254, 255 (M.D., Ga.).

I leave this phase of the case with the observation that if the Civil District Court of Orleans Parish wrongly decided the jurisdictional issue, its error will be corrected on the appeal now pending.

## II

IN VIEW OF THE PENDENCY OF THE APPEAL IN LOUISIANA, DOES THE JUDGMENT OF THE COURT IN THAT STATE POSSESS THE NECESSARY FINALITY UNDER THE FULL FAITH AND CREDIT CLAUSE FOR ENFORCEMENT THEREOF IN THIS JURISDICTION?

■ A judgment of a state court in order to be given full faith and credit in another jurisdiction must be a final judgment adjudicating the litigation in a conclusive manner. 50 C.J.S. Judgments § 889(3); Resolute Insurance Company v. North Carolina, 276 F.Supp. 660, 666 (E.D., N.C.), aff'd. 397 F.2d 586 (4th Cir.), cert. den. 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439. In 47 Am. Jur.2d Judgments § 1269, it is said:

"The fact that a foreign judgment is subject to an appeal does not render it interlocutory within the meaning of the rule denying full faith and credit to interlocutory judgments; the full faith and credit clause of the United States Constitution applies as soon as a judgment is enforceable, and not merely after the time to appeal has

5. Defendant's objection to jurisdiction of the Louisiana court was based solely on the applicability of the Long-Arm statute. There was no reliance on 12 U.S.C. § 94 which provides that suits against national banks be brought "in any district . . . court of the United States held within the district in which such association may be established, or in any State, county, or munici-

pal court in the county or city in which said association is located having jurisdiction in similar cases." See Mercantile National Bank v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523; Northside Iron and Metal Company, Inc. v. Dobson and Johnson, Inc., 480 F.2d 798 (5th Cir.); Swiss Israel Trade Bank v. Mobley, 319 F.Supp. 374 (S.D., Ga.).

elapsed. Similarly, although there is some authority to the contrary,[6] a judgment from which an appeal has been taken without supersedeas has also been regarded as a final judgment entitled to be accorded full faith and credit, even though the appeal is still pending in the court of the original jurisdiction."

■ The finality of the judgment of a state court, the enforcement of which is sought in another jurisdiction, depends on the law of the state in which same was originally entered. Nowell v. Nowell, *supra*; Crayne v. Crayne, 54 Nev. 205, 13 P.2d 222; 50 C.J.S. Judgments § 889(3); 47 Am.Jur.2d § 1271. "The Full Faith and Credit Clause and the statute which implements it . . . require the judgments of the courts of one State to be given the same faith and credit in another State as they have by law or usage in the courts of the State rendering them." Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L. Ed. 488. Maner v. Maner, 412 F.2d 449 (5th Cir.) dealt with the enforceability in a federal court in Alabama of the judgment of a circuit court in Florida pending an appeal in that State. "Since the judgment is final for purposes of execution in the state of its rendition, comity compels us to hold," said the Fifth Circuit, "that it can be regarded no less than final in Alabama." In Ferster v. Ferster, 220 Ga. 319, 138 S.E.2d 674, a proceeding was brought in the Georgia courts based on a Maryland judgment. "The record is silent as to any supersedeas of the Maryland decree, hence it is enforceable," concluded the Supreme Court of Georgia.

Counsel for the Bank suggest that under Louisiana law appellate review is unique in that the constitutional right thereto in civil cases extends both to law and fact. Although findings by a trial judge or jury are entitled to great weight on appeal, the appellate court must review the facts as well as the law and set aside a verdict where it is clearly erroneous. Deshotel v. Aetna Casualty & Surety Company, La.App., 269 So. 2d 850. This dilutes, it is argued, any finality in a ruling as to existence of jurisdiction.

The difference between the Louisiana and the conventional rule in appellate review is one of mere degree. On the one hand, there is ascertainment of whether the finding is not clearly erroneous and, on the other, the appellate court looks for adequate supporting evidence. The point is that in Louisiana a judgment below is final until it is set aside above.

In this setting, I turn to the law of Louisiana as to the effect of the pendency of appeal upon the execution of a judgment prior to appellate decision.

The Code of Civil Procedure of Louisiana provides for two types of appeal —a devolutive and a suspensive appeal. The former is one which "does not suspend the effect or the execution of an appealable order or judgment" and may be taken within ninety days after any application for new trial is ruled upon if presented. LSA–C.C.P. Art. 2087.[7] A suspensive appeal is one that "suspends the effect or the execution of an appealable order or judgment" and must be taken within fifteen days after any application for new trial is ruled upon if

---

6. See, for example, Re Forslund, 123 Vt. 341, 189 A.2d 537; Nowell v. Nowell, 157 Conn. 470, 254 A.2d 889, cert. den. 396 U.S. 844, 90 S.Ct. 68, 24 L.Ed.2d 94.

7. Delay for taking devolutive appeal: "Except as otherwise provided by law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, only within ninety days of:

(1) The expiration of the delay for applying for a new trial, as provided by Article 1974, if no application has been filed timely;

(2) The court's refusal to grant a timely application for a new trial, if the applicant is not entitled to notice of such refusal under Article 1914; or

(3) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial, if the applicant is entitled to such notice under Article 1914."

presented. LSA–C.C.P. Art. 2123.[8] A creditor in Louisiana may proceed with the execution of a judgment only after the time for taking a suspensive appeal has lapsed. LSA–C.C.P. Art. 2252. Consistent with the distinct nature of the suspensive and devolutive appeals, the requirements of security for such appeals are different. A devolutive appeal bond provides security for court costs only; a suspensive appeal bond requires security for the judgment as well as court costs.[9] LSA–C.C.P. Art. 2124; Lakeside Rambler Sales, Inc. v. Durad Corporation, 228 So.2d 745 (La.App.).

Under Louisiana law, an appeal may be found to be devolutive or suspensive by determining when the appeal was filed and the amount of the security bond furnished. Lakeside Rambler Sales, Inc. v. Durad Corporation, *supra*; Cousin v. Louisiana State Board of Health, 138 So.2d 836 (La.App.). The Bank elected to file a devolutive appeal from the judgment of the Civil District Court. Its Notice of Appeal from the judgment of December 10, 1973, was not filed until March 19, 1974. There is no indication whether the defendant had filed a motion for new trial and it is therefore impossible to determine whether the Notice of Appeal was filed more than fifteen days after the Court's refusal to grant a new trial. The record reflects, however, that the appeal bond posted by the Bank was only in the amount of $500 and necessarily represented security for costs only.[10]

After the time for filing a suspensive appeal has gone by, the party who obtained judgment in the Civil District Court has the right to execute same and the losing party possesses no valid remedy to prevent execution of the judgment. Home Insurance Co. v. Southern Specialty Sales Co., 222 So.2d 649, 651 (La. App.); Portier v. Marquette Casualty Company, 245 La. 702, 160 So.2d 585 (Sup.Ct.); Duffey v. Mississippi River Bridge Authority, 126 So.2d 656 (La. App.); Austin v. Currie, 16 La.App. 375, 134 So. 723.

As stated in Norman v. Guarisco, 116 So.2d 872, 876 (La.App.), the "suspensive appeal suspends the entire proceeding and all matters in connection therewith . . . while the devolutive appeal does not prevent execution of the judgment. . . ." In either event, the finality of the judgment is suspended but it remains "a final and definitive judgment" from which an appeal may be taken. At 876.

A judgment creditor in Louisiana is entitled to enforcement of the judgment when a devolutive appeal is taken. This Court must give the same effect to a judgment of that State as it would be entitled to in Louisiana and defendant is not entitled, under the law of that State, to a stay of execution of the judgment

---

8. Delay for taking suspensive appeal: "Except as otherwise provided by law, an appeal which suspends the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, only within fifteen days of:

(1) The expiration of the delay for applying for a new trial, as provided by Article 1974, if no application has been filed timely,

(2) The court's refusal to grant a timely application for a new trial, if the applicant is not entitled to notice of such refusal under Article 1914; or

(3) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial, if the applicant is entitled to such notice under Article 1914."

9. There is no right to a suspensive appeal unless the security is filed within the required period. Failing to do so, only a devolutive appeal may be taken. Ziegler v. Barbin, 238 So.2d 807 (La.App.).

10. The security required for a suspensive appeal is determined in accordance with the following rule: When the judgment is for a sum of money, the amount of the security shall exceed by one-half the amount of the judgment, including the interest allowed by the judgment to the date the security is furnished, exclusive of costs. LSA–C.C.P. Art. 2124.

pending decision in the devolutive appeal.[11]

■ The Louisiana judgment possesses the requisite of finality that requires recognition and enforceability thereof under the Full Faith and Credit Clause.

### III

DOES THE BANK'S CONTENTION THAT THE LOAN AGREEMENTS WERE PROCURED BY FRAUD CONSTITUTE A VALID DEFENSE TO THE ENFORCEMENT BY THIS COURT OF THE LOUISIANA JUDGMENT?

Defendant contends in its answer that "this suit and the suit pending in the Civil District Court for the Parish of Orleans . . . arises out of a series of fraudulent acts and transactions by and between inter-related insurance and holding companies" and that as "a result of the fraudulent and questionable acts and transactions by and between said companies, this Court should not grant full faith and credit to the Louisiana judgment. . . ."

■ The general rule is that full faith and credit does not have to be accorded a judgment where the collateral attack is based on its procurement through fraud. 50 C.J.S. Judgments § 895. However, the impeachment of a foreign judgment is limited to existence of fraud that is extrinsic in its nature, that is, fraud preventing one from having a real contest of the suit based on

conduct or activities outside of the court proceedings themselves. See 47 Am.Jur. 2d Judgments § 1239; 46 Am.Jur.2d §§ 710, 826. Intrinsic fraud is unavailing as the basis of collateral attack. It consists of fraudulent acts that pertain to an issue involved in the original action which was litigated or could have been litigated therein. 46 Am.Jur.2d § 826, pp. 982–983. See also United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; Fisbe v. Buker, 125 F.2d 841, 849 (8th Cir.); Young v. Young, 188 Ga. 29, 31, 3 S.E.2d 635; 15A Words and Phrases, "Extrinsic or Collateral Fraud", pp. 732–745 (1950 Ed.).

■ The fraud claimed in the Bank's answer in the instant case is intrinsic in nature. It relates to alleged acts and transactions by the plaintiffs and others in respect to the loan obligation sued on in Louisiana. Such conduct could have been the subject matter of a defense in the litigation in that State. It is insufficient to keep this Court from according full faith and credit to the Louisiana judgment.

### ORDER

There being no genuine dispute as to the facts and the issues as to the law being clear, plaintiff's motion for summary judgment is granted. Judgment will be entered for plaintiff in this Court upon submission of a proposed form thereof. It will cover the amount of the Louisiana judgment together with interest and the costs of the present action.

11. In event of entry of judgment by this Court the effect would be an automatic stay for ten days during which time defendant Bank could apply for a stay pursuant to Rule 62(a), F.R.Civ.P. If defendant elects to appeal, it may obtain a stay with this Court's approval by filing a supersedeas bond. The Bank posted security only for costs pending the appeal in the Louisiana action. The appeal being devolutive does not bar execution of the judgment taken by the Bank. If a suspensive appeal had been taken so as to stay the execution of the Louisiana judgment as far as Fidelity Standard is concerned, the defendant Bank would have been required to post security for 1½ times the amount of the judgment. Should this Court refuse to enforce the Louisiana judgment, the effect thereof would be to grant the defendant Bank a *suspensive* appeal in the Louisiana case without requiring the necessary security under the laws of that State.